IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| DARLENE STINGER, SHARON BUSH, & TIA NEWTON c/o 1825 K St., NW, Ste. 750, Washington, DC 20006 | JURY TRIAL DEMANDED |
| Plaintiffs, | Civil Action No.: |
| v. | |
| FORT LINCOLN CEMETARY, LLC 610 W. McPhail Road Bel Air, MD 21014 | |
| Serve: CSC-Lawyers Incorporating Service Company 7 St. Paul Street, Suite 820 Baltimore, MD 21202 | |
| and | |
| SERVICE CORPORATION INTERNATIONAL 1929 Allen Parkway, 2934 9th Floor Houston, TX 77019 | |
| Serve: Corporation Service Company d/b/a CSC Lawyers Incorporating 211 E. 7th Street, Suite 620 Austin, TX 78701 | |
| Defendants. | |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Darlene Stinger, Almeda Bush, and Tia Newton ("Plaintiffs"), by undersigned counsel, on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE CASE

1. Defendants employ Plaintiffs as Family Service Counselors ("Counselors") at Fort Lincoln Funeral Home and Cemetery in Brentwood, Maryland, one of more than 1,900 funeral homes and cemeteries Defendant Service Corporation International controls in North America.

2. Defendants willfully violated the FLSA by failing to pay Plaintiffs and similarly situated employees one and a half their regular rate of pay for overtime hours worked during workweeks that Plaintiffs and similarly situated employees were ineligible for the retail sales commission exemption because:

   a. Defendants failed to pay Plaintiffs and similarly situated employees in excess of $10.875 for all hours worked in a workweek;

   b. Defendants failed to pay Plaintiffs and similarly situated employees in excess of one and a half times the applicable minimum wages of states that provide a higher applicable minimum wage;

   c. Plaintiffs and similarly situated employees did not receive more than half of their compensation from commission during representative periods; or

   d. Plaintiffs and similarly situated employees did not receive more than one and a half the applicable minimum wage for all hours worked as their regular rate of pay because portions of the money they received were unearned advances, subject to potential repayment, which Defendants expressly provided did "not become a commission or wage until all conditions precedent associated with the [sales contract] are satisfied." Some of these conditions precedent could not be met for a full year.

3. Defendants also willfully violated the FLSA by failing to pay Plaintiffs minimum wage for all hours worked.

2

4.  Last, Defendants willfully violated the FLSA by implementing a compensation plan that provided that Plaintiffs' receipt of advances required to meet Defendants' minimum wage and overtime obligations created a liability that Plaintiffs were obligated to repay.

5.  On behalf of themselves and all other similarly situated employees who may choose to opt in to this action, Plaintiffs now seek restitution for unpaid minimum wage and overtime wages, liquidated damages, attorneys' fees and costs, and any other damages to which they may be entitled at law or equity.

## JURISDICTION AND VENUE

6.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

7.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## PLAINTIFFS AND SIMILARLY SITUATED EMPLOYEES DESCRIPTION

8.  Plaintiffs bring this action on behalf of themselves and the following similarly situated employees:

> All current and former retail sales employees employed at SCI-controlled cemeteries and funeral homes located in the United States, who were employed by Defendants at any time during the applicable period of limitations of two years for FLSA violations and three years for willful violations of the FLSA, up to and including entry of a final judgment in this case and who are plaintiffs or who elect to opt-in to this action under the FLSA, 29 U.S.C. §216(b).

## THE PARTIES

9.  Plaintiffs were employed by Defendant as Counselors at Fort Lincoln Funeral Home and Cemetery in Brentwood, Maryland.

10. Defendant Fort Lincoln Cemetery, LLC ("Fort Lincoln Cemetery") is a funeral home,

crematory, and cemetery in Brentwood, Maryland.

11. Defendant Service Corporation International ("SCI") claims to be the leading provider of funeral, cremation, and cemetery services in North America, with more than 1,900 locations in the U.S. and Canada.

12. SCI controls the operations of Fort Lincoln Cemetery, and upon information and belief, is the managing member or otherwise controls Fort Lincoln Cemetery.

13. Upon information and belief, SCI controls the operations of its other 1,900 locations in the U.S. and Canada.

14. Both Defendants' annual gross volume of sales or business done exceeds $500,000.

## FACTS

### Background

15. Plaintiff Darlene Stinger initiated her employment with Defendants in July of 2019 as a Counselor.

16. Plaintiff Almeda Bush initiated her employment with Defendants in February of 2019 as a Counselor.

17. Plaintiff Tia Newton initiated her employment with Defendants in October 2015 as a Counselor.

### Plaintiffs' job duties

18. Counselors' role principally entails administrative tasks, but also sales.

19. Counselors work one week in the office and the next week "out of office."

20. During the weeks in office, Counselors job duties are to:

    a. Assist with burial services;

    b. Participate in after care visits, requiring Counselors to drive to the home of the person

4

and/or family that planned funeral services within a few days after the service;

   c.  Conduct park tours;

   d.  "Flag" sites for when a graveside committal service is planned;

   e.  Drive customers to gravesites;

   f.  Run the cemetery services and merchandise at the funeral home;

   g.  Meet with clients to discuss burial rights;

   h.  Perform quitclaim and deed transfers;

   i.  Organize scheduling and fill out paperwork for the Burial board;

   j.  Upsell products;

   k.  Sell products to the customers;

   l.  Make phone calls on Tuesday nights for sales; and

   m. Attend weekly meetings.

21. Counselors also sell property for gravesites, caskets, embalming, cremation, burial vaults, and any other necessities for the death of a loved one.

22. Upon information and belief, approximately 20% of the Counselors' work consisted of sales.

23. Counselors did not have discretion or independent judgment in the performance of their administrative tasks.

24. Counselors followed policies and the directives of their supervisors and did not have the authority to disregard policies or directives without supervisor approval.

25. While out of the office, Counselors go to client's homes for after care visits and attempt to establish relationships out in the community in an attempt to cultivate relationships for future sales.

26. During their weeks working outside the office, Counselors are still required to be in the office

on Monday and Friday for meetings and on Tuesdays for call nights, where they are on the phone for several hours making sales calls.

27. Although Counselors worked outside of the office for portions of every other week, the majority of sales they made were made at the office or from their homes.

**Defendants were Plaintiffs' joint employers within the meaning of the FLSA**

28. Fort Lincoln Cemetery paid Plaintiffs their wages or commissions, but listed SCI's address and not Fort Lincoln Cemetery's address, on Plaintiffs pay stubs.

29. Plaintiffs' supervisors appeared to be nominally employed by Fort Lincoln Cemetery.

30. SCI set the policies that controlled how Plaintiffs and Plaintiffs' supervisors performed their work.

31. SCI set the compensation plan, the SCI "Family Services Sales Incentive Plan Document," (hereinafter, the "Incentive Plan") that controlled how Fort Lincoln Cemetery paid Plaintiffs and other Counselors.

32. Thus, SCI and Fort Lincoln Cemetery shared control over Plaintiffs through Fort Lincoln Cemetery supervisors and SCI's control of the work and pay practices that it required Fort Lincoln Cemetery to follow.

33. The individuals with power to hire and fire Plaintiffs appeared to be nominally employed by Fort Lincoln Cemetery.

34. Fort Lincoln Cemetery is an affiliate of SCI, and upon information and belief, SCI is the managing member or otherwise owns and controls Fort Lincoln Cemetery.

**Defendants' method of compensation for Counselors.**

35. Plaintiffs, and other Counselors at Fort Lincoln Cemetery and other SCI locations, earned anywhere from 4 to 9 percent in commissions depending on which item s/he sold.

6

36. Counselors did not earn commissions from sales until all conditions for performance of the contract were met, including (1) non-cancellation within a year of the contract being processed; (2) receipt of timely payment; (3) the Counselor's performance of post-processing responsibilities such as servicing the account, staying in contact with the customer, responding to customer and billing service questions, and responding to Company questions; and (4) maintaining a Reserve Account balance of zero or above.

37. Between the time a sales contract was signed and the commission was earned, Defendants provided Counselors "Unearned Advances," made up of a percentage of the unearned commission on the signed contract.

38. The Incentive Plan provided that these unearned advances did not become a "commission or wage until all conditions precedent associated with the [signed contract] are satisfied."

39. The percentage of the signed contract commission that was not provided as an unearned advance was assigned to a Counselor's reserve account.

40. Each Counselor's reserve account had a maximum of $5,000.

41. When a Counselor's reserve account was greater than or equal to zero, he/she received 90% of potential commissions as Unearned Advances, while 10% went to his/her reserve account until it reached $5,000.

42. When a Counselor's reserve account balance was negative, he/she received 50% of potential commissions as an Unearned Advance and 50% went to his/her reserve account.

43. The Incentive Plan provided that if a sales contract was canceled within twelve months of the sales processing, or if the other conditions precedent to earning commission on the sale were not met, including, *inter alia*, if the customer ceased making timely payment, if the Counselor did not perform post-processing duties, or if the Counselor had a negative reserve account

balance, then the Defendant would charge back Unearned Advances against the Counselor's Reserve Account.

44. The Incentive Plan provided that if a Counselor's "payable biweekly commission amount," did not meet the minimum wage, the Defendants would provide a "Minimum Wage Adjustment," to ensure the Counselor is paid minimum wage for all hours worked.

45. If a Counselor was paid a Minimum Wage Adjustment, the amount of the Minimum Wage Adjustment would be deducted from his/her monthly commissions for the pay period in which the Counselor received a Minimum Wage Adjustment.

46. The Incentive Plan provided that if a Counselor's commission did not meet the requirement of Section 7(i) of the FLSA, the counselor would be paid overtime premium pay for hours worked in excess of 40 in the failing workweek at **one-half** their regular rate of pay.

47. The Incentive Plan provided that the 7(i) test would be run on the second month following the close of production to ensure all earnings are accounted for prior to running the test, and that if a Counselor did not meet the exemption, they would be paid the overtime premium once the test has completed.

48. For "Overpayments," the Plan provided:

> "When a participant is overpaid an incentive payment, the participant is obligated to repay the Company.  Overpayments are recoverable against all earnings.  All earned incentives are applied to repayment until the overpayment has been paid in full.
>
> If there is not enough earned incentives to pay off the overpayment in the current month, a liability is created.  This liability will be carried forward until the overpayment balance is zero.  Upon termination, any remaining liability will be deducted from any amount due the participant.

**Defendants failed to pay Plaintiffs and similarly situated employees the minimum wage and one and half their regular rate for overtime in workweeks Defendants failed to pay Plaintiffs and similarly situated employees $10.875 per hour**

8

49. During some pay periods, Defendants' pay practices caused Defendants to fail to pay Plaintiffs $10.875 per hour for each workweek.

50. Upon information and believe, during some pay periods, Defendants' pay practices caused Defendants to fail to pay Counselors similarly situated to Plaintiffs $10.875 per hour for each workweek.

51. During some of these pay periods in which Defendants did not pay Plaintiffs and similarly situated employees $10.875 per hour for each workweek, Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated employees $7.25 per hour for hours worked in a workweek.

52. During some of these pay periods in which Defendants did not pay Plaintiffs $10.875 per hour for each work week, Defendants violated the FLSA by failing to pay Plaintiffs for hours worked in excess of forty in a workweek at a rate one and a half times Plaintiffs' regular hourly rate.

**Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated employees minimum wage and one and half their regular rate for overtime in workweeks Defendants failed to pay Plaintiffs and similarly situated employees one and a half the minimum wage of their state**

53. Maryland, among other states, provides for a higher applicable minimum wage than the federal minimum wage.

54. During some pay periods, Defendants' pay practices caused Defendants to fail to pay Plaintiffs one and a half this higher applicable minimum wage for each workweek.

55. Upon information and believe, during some pay periods, Defendants' pay practices caused Defendants to fail to pay Counselors similarly situated to Plaintiffs one and a half times the higher applicable minimum wage for each workweek.

9

56. During some of these pay periods in which Defendants did not pay Plaintiffs and similarly situated employees one and a half times the higher applicable minimum wage, Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated employees $7.25 per hour for hours worked in a workweek.

57. During some of these pay periods in which Defendants did not pay Plaintiffs and similarly situated employees one and a half times the applicable minimum wage, Defendants violated the FLSA by failing to pay Plaintiffs for hours worked in excess of forty in a workweek at a rate one and a half times Plaintiffs' regular hourly rate.

**Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated employees overtime at one and a half their regular rates during Section 7(i) representative periods in which the Plaintiffs did not receive at least 50% of their compensation through commission**

58. The Incentive Plan provided that Defendants would test for compliance with Section 7(i) as follows:

> The 7(i) test will be run on the second month following the close of production to ensure all earnings are accounted for prior to running the test. If an associate does not meet the exemption requirements, the overtime premium payment will be paid once the test has completed. *Example: January earnings will be tested in March and any overtime due will be paid in March if required.*

59. During some monthly 7(i) periods, Plaintiffs did not receive at least 50% of their compensation from commission.

60. Upon information and belief, during some 7(i) periods, Counselors similarly situated to Plaintiffs did not receive at least 50% of their compensation from commission.

61. During the 7(i) periods in which Plaintiffs and similarly situated employees did not receive 50% of their compensation from commission, Defendants violated the FLSA by failing to pay Plaintiffs for hours worked in excess of forty in a workweek at a rate one and a half times Plaintiffs' regular hourly rate.

10

**Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated employees overtime at one and a half their regular rates during workweeks Plaintiffs did not receive a regular rate of pay one and a half the applicable minimum wage because the payments Plaintiffs received were subject to repayment and were expressly not a wage or commission**

62. During some workweeks, Defendants provided Plaintiffs one and a half times the applicable minimum wage only because Defendants provided Plaintiffs Unearned Advances.

63. Upon information and belief, Defendants provided Counselors similarly situated to Plaintiffs one and a half times the applicable minimum wage only because Defendants provided Plaintiffs Unearned Advances.

64. During some of these pay periods in which Defendants did not pay Plaintiffs and similarly situated employees one and a half times the applicable minimum wage without including Plaintiffs' receipt of Unearned Advances, Defendants violated the FLSA by failing to pay Plaintiffs for hours worked in excess of forty in a workweek at a rate one and a half times Plaintiffs' regular hourly rate.

**Defendants' policy requiring repayment of Unearned Advances the FLSA's requirement that employees receive wages free and clear**

65. During some workweeks, Defendants only provided Plaintiffs minimum wage and overtime payments through Plaintiffs' receipt of unearned advances that were subject to repayment.

66. Defendants' policy requiring Plaintiffs to repay overpayments violates the requirement that employees receive wages finally and unconditionally or "free and clear."

## JURY DEMAND

67. Plaintiffs demand a trial by jury.

## COUNT 1
## FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA
### (29 U.S.C. § 201, *et seq.*)

68. Plaintiffs repeat and reallege every allegation in the Complaint.

11

69. Defendants are employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

70. The FLSA requires enterprises engaged in commerce to pay employees the minimum wage of $7.25 for any hour worked.  29 U.S.C. § 206(a).

71. Defendants violated the FLSA by knowingly failing to pay Plaintiffs $7.25 for reach hour worked.

72. Defendants' violations of the FLSA were willful.

73. For Defendants' violations of the FLSA, Defendants are liable to Plaintiffs for unpaid minimum wages, an equal amount as liquidated damages, court costs, reasonable attorney's fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT 2
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (29 U.S.C. § 201, *et seq.*)

74. Plaintiffs repeat and reallege every allegation in the Complaint.

75. Defendants are employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

76. The FLSA requires employers to pay non-exempt employee one and one-half times their regular hourly rate for hours worked in excess of 40 hours in one workweek. 29 U.S.C. § 207(a)(1).

77. Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-half times Plaintiffs' regular hourly rates for hours worked in excess of 40 hours in any one workweek during workweeks in which Plaintiffs were not exempt employees within the meaning of the FLSA.

78. Defendants' violations of the FLSA were willful.

79. For Defendants' violations of the FLSA, Defendants are liable to Plaintiffs for unpaid overtime wages, an equal amount as liquidated damages, court costs, reasonable attorney's

fees and expenses, interest, and any other relief deemed appropriate by the Court.

**COUNT 3**
**FAILURE TO PAY FREE AND CLEAR WAGES**
**(29 U.S.C. § 201, *et seq.*)**

80. Plaintiffs repeat and reallege every allegation in the Complaint.

81. Defendants are employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

82. The FLSA, through its implementing regulations, requires employers to pay employees wages finally and unconditionally.  29 C.F.R. § 531.35.

83. Defendants violated the FLSA by implementing a policy in which payments it made to satisfy its minimum wage and overtime obligations were subject to repayment and were not final or unconditional.

84. Defendants' violations of the FLSA were willful.

85. For Defendants' violations of the FLSA, Defendants are liable to Plaintiffs for unpaid overtime wages, an equal amount as liquidated damages, court costs, reasonable attorney's fees and expenses, interest, and any other relief deemed appropriate by the Court.

WHEREFORE, Plaintiffs, on behalf of themselves and all other persons similarly situated, known or unknown, request that this Court enter the following relief:

1. The opportunity to notify other similarly situated employees to opt-in to this action pursuant to 29 U.S.C.§ 216(b);

2. Restitution for the portion of the minimum wage that Plaintiffs and Similarly Situated Employees have not received,

3. Compensation for the overtime work for which Plaintiffs and Similarly Situated Employees have not been compensated at a rate of one and one-half the lawfully required rate;

4. Compensation for wages and commissions earned but unpaid;

5.      Liquidated damages pursuant to 29 U.S.C. § 216(b);

6.      Attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

7.      Any other relief in law or equity to which Plaintiffs and Similarly Situated

Employees may be entitled.


Date:   April 23, 2020                    RESPECTFULLY SUBMITTED,

                                          Alan Lescht & Associates, P.C.

                                          By:*/s/Rani Rolston*_____

                                          Rani Rolston (Md. Bar # 17402)
                                          Alan Lescht (Md. Bar #12928)
                                          1825 K St., NW, Ste. 750
                                          Washington, DC 20006
                                          T: 202.463.6036
                                          F: 202.463.6067
                                          rani.rolston@leschtlaw.com
                                          alan.lescht@leschtlaw.com
                                          *Attorneys for Plaintiffs*