Brandon Nagy (D. Md. Bar No. 20834)
**STINSON LLP**
1775 Pennsylvania Avenue N.W., Suite 800
Washington, DC 20006-4605
Phone: (202) 785-9100
Fax: (202) 785-9163
brandon.nagy@stinson.com

Lonnie J. Williams, Jr. (*pro hac vice*)
**STINSON LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
lonnie.williams@stinson.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND

DARLENE STINGER, SHARON BUSH, and TIA NEWTON,

               Plaintiffs,

v.

FORT LINCOLN CEMETERY, LLC, and SERVICE CORPORATION INTERNATIONAL,

               Defendants.

Civil No. 8:20-cv-01052-TDC

**DEFENDANTS' MOTIONS TO (1) DISMISS (RULE 12(b)(3)), (2) STRIKE COLLECTIVE ACTION ALLEGATIONS, AND (3) DISMISS (RULE 12(b)(2))**

CORE/0810992.0080/159478097.7

# TABLE OF CONTENTS

I.      INTRODUCTION. ...................................................................................................1

II.     RELEVANT FACTS.............................................................................................2

        A.      Fort Lincoln's and SCI's Businesses, and SCI's Lack of Contacts
                with the State of Maryland. ...............................................................2

        B.      Plaintiffs are Current and Former Employees of Fort Lincoln that
                Entered into Arbitration Agreements. ................................................2

III.    LEGAL ARGUMENT. .........................................................................................4

        A.      The Court Must Dismiss Plaintiffs' Complaint Because Plaintiffs'
                Agreed to Arbitrate Their Claims........................................................5

                1.      The Federal Arbitration Act governs arbitration agreements
                        like the MRPA ..................................................................5

                2.      Courts favor enforcement of arbitration agreements like the
                        MRPA ...............................................................................6

                3.      The MRPA is a valid and enforceable arbitration agreement
                        under Maryland law, and it covers all of Plaintiffs' claims in
                        the complaint.....................................................................7

        B.      This Court Should Strike Plaintiffs' Collective Action Allegations
                Because the MRPA Expressly Bars Collective Action Arbitration. ...........9

                1.      This Court determines the issue of class or collective action. .........9

                2.      An arbitration agreement is a contract, and a court must
                        enforce it according to its terms...................................10

                3.      The MRPA explicitly states the parties will not engage in
                        class or collective arbitration .......................................11

        C.      Plaintiffs' Complaint Must Be Dismissed as to SCI Because this
                Court Does Not Have Personal Jurisdiction Over SCI ...........................11

                1.      This Court should rule on SCI's motion to dismiss for lack of
                        personal jurisdiction because the Court's failure to do so may
                        cause SCI to waive its personal-jurisdiction defense. ................11

                2.      SCI does not have sufficient "minimum contacts" with
                        Maryland to allow this Court personal jurisdiction over SCI.......12

                3.      Plaintiffs cannot prove that Fort Lincoln's contacts with
                        Maryland should be attributed to SCI...........................14

CORE/0810992.0080/159478097.2
CORE/0810992.0080/159478097.7

4.      SCI's website passively provides information and does not create contacts sufficient to allow this Court to exercise jurisdiction. ...................................................................................15

IV.    CONCLUSION. .................................................................................17

CORE/0810992.0080/159478097.7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc., v. Dobson*,
    513 U.S. 265 (1995) .................................................................................... 6

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ................................................. 13, 14, 16, 17

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................ 9, 10

*AT&T Techs., Inc. v. Communic'ns Works of Am.*,
    475 U.S. 643 (1986) ..................................................................................... 7

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ..................................................................................... 9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................... 14

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
    334 F.3d 390 (4th Cir. 2003) .................................................................... 12

*Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*,
    252 F.3d 707 (4th Cir. 2001) ................................................................ 5, 6, 8

*Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v.
    Nolan*,
    259 F.3d 209 (4th Cir. 2001) .................................................................... 14

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ............................................................................... 6, 10

*Consulting Engineers Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) .................................................................... 12

*Cty. Comm'rs of Carrol Cty. v. Forty W. Builders*,
    178 Md. App. 328, 941 A.2d 1181 (2008).................................................. 7

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ................................................................................. 6, 8

CORE/0810992.0080/159478097.2
CORE/0810992.0080/159478097.7

*Del Webb Cmtys, Inc. v. Carlson*,
   817 F.3d 867 (4th Cir. 2016) ............................................................... 9, 11

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) .......................................................................... 5, 6

*Fidrych v. Marriott Int'l, Inc.*,
   952 F.3d 124 .................................................................................. 16, 17

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ............................................................................... 7

*Galloway v. Santander Consumer USA, Inc.*,
   819 F.3d 79 (4th Cir. 2016) ................................................................. 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ................................................................................ 6

*Hanson v. Denckla*,
   357 U.S. 235 (1953) ........................................................................... 13

*Harris v. Arlen Props., Inc.*,
   256 Md. 185, 260 A.2d 22 (1969) ...................................................... 15

*Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Grp., Inc.*,
   299 F. Supp. 2d 505 (D. Md. 2004) ................................................... 15

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408 (1984) ........................................................................... 13

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ........................................................................... 13

*James v. Synovus Bank*,
   Civil Action No. TDC-19-1137, 2020 WL 1479115 (D. Md. Mar. 26,
   2020) (unpublished) ..................................................................... 5, 6, 8

*Mackey v. Compass Mktg, Inc.*,
   391 Md. 117, 892 A.2d 479 (2006) ................................................ 12, 13

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) .............................................................................. 10

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) ............................................................................. 6, 7

iv

*Mylan Labs., Inc. v. Akzo, N.V.*,
    2 F.3d 56 (4th Cir. 1993) ................................................................ 5, 11, 12, 14, 15

*O'Neil v. Hilton Head Hosp.*,
    115 F.3d 272 (4th Cir. 1997) ................................................................ 7

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952) ................................................................ 13

*Porter v. Gen. Boiler Casing Co., Inc.*,
    284 Md. 402, 396 A.2d 1090 (1979) ................................................................ 7

*Price George's Cty. v. Silverman*,
    58 Md. App. 41, 472 A.2d 104 (1984) ................................................................ 7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ................................................................ 6

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ................................................................ 9, 10

*Saudi v. Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2005) ................................................................ 14

*Scott v. Family Dollar Stores, Inc.*,
    733 F.3d 105 (4th Cir. 2013) ................................................................ 9

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ................................................................ 6

*Stanley v. Central Garden & Pet Corp.*,
    891 F. Supp. 2d 757 (D. Md. 2012) ................................................................ 9

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................ 10, 11

*Stone v. Wells Fargo Bank, N.A.*,
    361 F. Supp. 3d 539 (D. Md. 2019) ................................................................ 4, 5, 12

*Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*,
    471 F.3d 544 (4th Cir. 2006) ................................................................ 5

*UMG Recordings, Inc. v. Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) ................................................................ 16

v

*Vitro Elec., Div. of Vitro of Am. v. Milgray Elecs., Inc.*,
    255 Md. 498, 258 A.2d 749 (1969) ........................................................ 14, 15

*Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989) ............................................................................ 7, 10

*Wash. Square Secs., Inc. v. Aune*,
    385 F.3d 432 (4th Cir. 2004) .................................................................... 7

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) ...................................................... 16, 17

**Statutes**

9 U.S.C. § 1, *et seq.* ................................................................ 1, 5, 6, 7, 8, 10

9 U.S.C. § 2 ............................................................................................ 6

9 U.S.C. § 4 .................................................................................... 1, 6, 8

29 U.S.C § 201 *et seq.* ....................................................................... 3, 4, 5, 8

Md. Code, Com. Law § 21-101(i) ............................................................ 7, 8

Md. Code, Com. Law §§ 21-101-120 ........................................................... 7

Md. Code, Com. Law § 106 ...................................................................... 8

2000 Md. Laws 42-43 ............................................................................. 7

Uniform Electronic Transaction Act ........................................................ 7, 8

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................ 12

Fed. R. Civ. P. 12(b)(2) ................................................................. 1, 5, 11

Fed. R. Civ. P. 12(b)(3) ...................................................................... 5, 12

Fed. R. Civ. P. 12(f) ............................................................................. 9

Fed. R. Civ. P. 12(g)(2) ....................................................................... 12

Fed. R. Civ. P. 23(d)(4) ......................................................................... 9

vi

U.S. Const. amend. XIX ........................................................................................ 12, 13

U.S. Const. art. I, § 8, cl. 3 ....................................................................................... 6

1    Defendants Fort Lincoln Cemetery, LLC, ("Fort Lincoln") and Service Corporation
2    International ("SCI") respectfully move this Court to dismiss the Plaintiffs' Collective Action
3    Complaint (the "Complaint") with prejudice, and strike Plaintiffs' collective-action allegations.
4    Additionally, SCI respectfully moves this Court to dismiss the Plaintiffs' Complaint with prejudice
5    pursuant to Federal Rule of Civil Procedure 12(b) (2) for lack of personal jurisdiction.

6    **I.    INTRODUCTION.**

7    Plaintiffs Darlene Stringer, Sharon Bush, and Tia Newton each entered arbitration
8    agreements that bar collective actions and require that they arbitrate disputes related to their
9    employment with Fort Lincoln. These arbitration agreements are valid and enforceable under the
10   Federal Arbitration Act, and the arbitration agreements cover all the claims alleged in the
11   Complaint. Upon the party's request, a court must order the parties to arbitrate any dispute covered
12   by the parties' valid and enforceable arbitration agreement. *See* 9 U.S.C. § 4. Consequently,
13   arbitration is the only venue to resolve the Plaintiffs' claims, and this Court must dismiss the
14   Complaint for improper venue.

15   The Arbitration Agreement bars corrective and class actions.  The Complaint filed by
16   Plaintiffs seeks corrective action.  The Agreement also provides for the court to decide any disputes
17   such as whether or not the Claimant can proceed with a corrective action.

18   Fort Lincoln is the Plaintiffs' employer. SCI.  On the other hand, SCI is a Texas holding
19   company headquartered in Houston that does not control Fort Lincoln or Fort Lincoln's decision-
20   making. Consequently, this Court should dismiss the Plaintiffs' claims against SCI for lack of
21   personal jurisdiction because SCI lacks sufficient contacts with the State of Maryland to satisfy
22   Maryland's long-arm statute and the Fourteenth Amendment's due process requirements.

23
24
25
26
27
28

CORE/0810992.0080/159478097.7

## II.    RELEVANT FACTS.

### A.    Fort Lincoln's and SCI's Businesses, and SCI's Lack of Contacts with the State of Maryland.

SCI is incorporated in Texas, with its corporate headquarters in Houston. Joint Record ("J.R.") at 2 (Exhibit 1, Decl. of Janet Key, at ¶¶ 4, 6). SCI is a holding company. J.R. at 2 (Exhibit 1 at ¶ 5). SCI has no employees or offices in the State of Maryland and it is not licensed to and does not conduct business in Maryland. J.R. at 2-3 (Exhibit 1 at ¶¶ 5, 7, 9-12). SCI does not sell any product or service through its website; it merely provides information about its affiliates' services and products. J.R. at 3, 5-6 (Exhibit 1 at ¶¶ 15-16; Exhibit 2-A). SCI is not a party to any contract with the Plaintiffs. J.R. at 2 (Exhibit 1 at ¶ 8). SCI does not control or directly own any portion of Fort Lincoln. J.R. at 2-3 (Exhibit 1 at ¶¶ 10, 13-14).

Fort Lincoln operates a cemetery located in Brentwood, Maryland. J.R. at 13 (Exhibit 2, Decl. of Cynthia M. Brown, at ¶ 26). Fort Lincoln sells products and provides services that facilitate interstate commerce. J.R. at 13 (Exhibit 2 at ¶ 27).

### B.    Plaintiffs are Current and Former Employees of Fort Lincoln that Entered into Arbitration Agreements.

At all times during Plaintiffs employment, there was one employer - Fort Lincoln. J.R. at 8 (Exhibit 2 at ¶ 4). Fort Lincoln paid the Plaintiffs and Fort Lincoln is on their respective paystubs. *See* J.R. at 8, 16, 18, 20 (Exhibit 2 at ¶ 4; Ex 2-A; Exhibit 2-B; Exhibit 2-C).

On or about August 20, 2015, Plaintiff Tia Newton began working for Fort Lincoln. *See* J.R. at 9-10 (Exhibit 2 at ¶ 13). The same day, she completed Fort Lincoln's onboarding process and electronically signed an agreement titled the Principles of Employment and Arbitration Procedures (the "PEAP") which required Newton to arbitrate disputes related to her work with Fort Lincoln. J.R. at 8-10, 37-38 (Exhibit 2 at ¶¶ 6-9, 13-15 & Exhibit 2-F at 3-4). On May 22, 2019, Newton electronically signed an updated agreement titled the Mutual Resolution Process Agreement (the "MRPA") which required Newton to arbitrate all covered disputes commenced

2

after the MRPA's execution. J.R. at 9-11, 26-27, 38 (Exhibit 2 at ¶¶ 10-12, 17; Exhibit 2-E at 1-2; Exhibit 2-F at 4).

Plaintiff Sharon Bush began working for Fort Lincoln on or about February 26, 2019, and electronically signed the PEAP during the onboarding process. *See* J.R. at 8-9, 11-12, 43 (Exhibit 2 at ¶¶ 6-9, 18-20 & Exhibit 2-G at 4). Bush electronically signed the MRPA on May 13, 2019. J.R. at 9, 12, 43 (Exhibit 2 at ¶¶ 10-12, 22; Exhibit 2-G at 4).

Plaintiff Darlene Stringer began working as an Associate for Fort Lincoln on or about June 17, 2019.  Ms. Stringer electronically signed the MRPA the same day. J.R. at 8-9, 12-13, 47 (Exhibit 2 at ¶¶ 6, 9-12, 23-25; Exhibit 2-H at 3).

By signing the MRPA, Plaintiffs agreed to arbitrate disputes relating to their work for Fort Lincoln. The MRPA states that the parties agree to "bring any Covered Dispute . . . in arbitration, rather than in Court." J.R. at 26 (Exhibit 2-E at 1). The MRPA's definition of "Covered Disputes" includes an Associate's "present or future" claims

> for non-payment, incorrect payment or late payment of wages, overtime, commissions, bonuses, premium pay, penalty pay, split shift pay, reporting time pay, paid sick leave, Paid Time Off, vacation, or any other compensation, whether such claims are based on an alleged contract, any federal, state, or municipal law, or any other theory.

J.R. at 28-29 (Exhibit 2-E at 3-4). Covered Disputes explicitly includes claims under the "Fair Labor Standards Act." J.R. at 29 (Exhibit 2-E at 4). The MRPA applies to covered disputes "commenced" on or after the employee signed the MRPA, and explicitly requires arbitration of claims against SCI. *See* J.R. at 26 (Exhibit 2-E at 1). The MRPA also included an express prohibition on collective action, including class or collection arbitration:

> **All Parties must bring any Covered Disputes . . . in arbitration under this Program. No party may bring or participate in a class or collective action against the other. The Parties waive any right to initiate or participate in a class or collective action, and the arbitrator cannot preside over any class or collective action. Further, the Associate will not join or consolidate their dispute brought by other individuals, unless agreed to in writing by all Parties. No**

3

**arbitration award or decisions will have any preclusive effect as to issues or Covered Dispute[s] with anyone who is not a party to the arbitration.**

*See* J.R. at 27-28 (Ex 2-E at 2-3).

When the Plaintiffs finished reviewing the MRPA, they saw the following acknowledgment:

By selecting the "I Agree" button, you acknowledge that you understand and agree to the Mutual Resolution Process Agreement. You agree your electronic signature is the legal equivalent of your manual signature.

J.R. at 10-13 (Exhibit 2 at ¶¶ 17, 22, 25). Each Plaintiff selected the "I Agree" button after viewing the MRPA. J.R. at 10-13, 38, 43, 47 (Exhibit 2 at ¶¶ 17, 22, 25; Exhibit 2-F at 4; Exhibit 2-G at 4; Exhibit 2-H at 3).

The Plaintiffs signed the MRPA through their personal accounts on Fort Lincoln's employee website. *See* J.R. at 8-13, 38, 43, 47 (Exhibit 2 at ¶¶ 6, 9-12, 17, 22, 25; Exhibit 2-F at 4; Exhibit 2-G at 4; Exhibit 2-H at 4). Plaintiffs' accounts are password-protected, and each Plaintiff set the password for her account. *See* J.R. at 8 (Exhibit 2 at ¶ 6). Only Plaintiffs can access their account, and only they could view and agree to the MRPA and accompanying acknowledgments through their account. *See* J.R. at 8 (Exhibit 2 at ¶ 6). When the Plaintiffs signed the MRPA, Fort Lincoln's system automatically generated and recorded the signature. *See* J.R. at 8-13, 38, 43, 47 (Exhibit 2 at ¶¶ 6, 9, 11-12, 17, 22, 25; Exhibit 2-F at 4; Exhibit 2-G at 4; Exhibit 2-H at 3).

Plaintiffs filed their Complaint on April 23, 2020. Compl. (Docket 1). Plaintiffs allege Fort Lincoln and SCI violated the Fair Labor and Standards Act in various ways relating to Plaintiffs' compensation for their work for Fort Lincoln. *See* Compl. at ¶¶ 2-4, 68-85.

## III.   LEGAL ARGUMENT.

Courts in the Fourth Circuit treat motions to dismiss and compel arbitration based on an arbitration agreement as a motion made under Federal Rule of Civil Procedure ("Rule") 12(b) (3). *See Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548-49 (D. Md. 2019). A plaintiff bears

the burden of proof when a defendant files a motion to dismiss under Rule 12(b) (2) and 12(b) (3). *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); *Stone*, 361 F. Supp. 3d at 548-49 (plaintiff bears the burden when the defendant seeks enforcement of arbitration agreement via Rule 12(b)(3) motion). When determining whether a court is the proper venue and has jurisdiction over a defendant, the court views the facts in the light most favorable to the plaintiff. Still, it may consider evidence offered by the defendant. *See Mylan Labs.*, 2 F.3d 56, 62; *Stone*, 361 F. Supp. 3d at 549 (quoting *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006)).  Since all of the claims presented in this lawsuit are arbitrable, dismissal is proper. *See James v. Synovus Bank*, Civil Action No. TDC-19-1137, 2020 WL 1479115 at *4 (D. Md. Mar. 26, 2020) (unpublished) (citing *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)).

### A.    The Court Must Dismiss Plaintiffs' Complaint Because Plaintiffs' Agreed to Arbitrate Their Claims.

Plaintiffs allege Defendants violated the FLSA in various ways related to Plaintiffs' compensation, and they filed their Complaint after each Plaintiff had signed the MRPA. Therefore, the MRPA governs their claims.[1]

1.    The Federal Arbitration Act governs arbitration agreements like the MRPA.

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, governs the interpretation and enforcement of arbitration agreements, including those related to employment, such as the MRPA. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (contracts to arbitrate employment disputes are covered by the FAA). The FAA states in part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration and controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[1]    If this Court finds that the MRPA is invalid or otherwise does not apply to Plaintiffs' claims, the PEAP would also obligate Plaintiffs to arbitrate their claims, based on the same analysis presented in this motion.

9 U.S.C. § 2. Courts must broadly construe the term "involving commerce" to include activities that in any way relate to interstate commerce. *See Allied-Bruce Terminix Cos., Inc., v. Dobson*, 513 U.S. 265, 273-275, 277 (1995) ("involving commerce" reaches full extent of Congress's power under the Commerce Clause); *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (*Allied-Bruce*'s rule applies in most employment contexts).   Therefore, the FAA governs an arbitration agreement when the underlying contract facilitates interstate commercial transactions, or directly or indirectly affects commerce between the states. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 & n.7 (1967) (rejecting necessity of literal interstate transaction). "Employment contracts . . . are covered by the FAA." *Waffle House, Inc.*, 534 U.S. at 289. The FAA preempts all conflicting state laws. *Southland Corp. v. Keating*, 465 U.S. 1, 15-16 (1984).

The MRPA "involv[es] commerce" as it relates to and governs disputes stemming from the Plaintiffs' employment at Fort Lincoln. Fort Lincoln itself engages in a business "involving commerce" by selling products that traveled or travel through interstate commerce, and providing services, including visitation to the cemetery, that involve persons that have traveled across state lines.

2.      Courts favor enforcement of arbitration agreements like the MRPA.

The FAA manifests a "liberal federal policy favoring arbitration agreements;" *see Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); and reverses the "longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, courts must compel arbitration when the arbitration agreement is a valid written agreement, a plaintiff's claims are within the agreement's scope, and the plaintiff has otherwise failed to arbitrate the claims. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (citing 9 U.S.C. §§ 3-4); *Choice Hotels*, 252 F.3d at 709-10 (dismissal is proper remedy when all claims arbitrable); *James*, 2020 WL 1479115 at *4.

6

A court must order arbitration of a claim unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" the claim. *See Washington Square Secs., Inc. v. Aune*, 385 F.3d 432, 436 (4th Cir. 2004) (quoting *AT&T Techs., Inc. v. Communic'ns Works of Am.*, 475 U.S. 643, 650 (1986)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273-74 (4th Cir. 1997) (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25).

3.   <u>The MRPA is a valid and enforceable arbitration agreement under Maryland law, and it covers all of Plaintiffs' claims in the complaint.</u>

In addition to the FAA, Maryland contract law also guides whether the MRPA is a valid and enforceable arbitration agreement that binds Plaintiffs. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Aune*, 385 F.3d at 435-36 ("[I]n applying general state law principles of contract interpretation to . . . an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration.") (*quoting Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

Under Maryland law, a contract is formed when another accepts an unrevoked offer made by one person, *i.e.* the parties mutually assent to definite terms. *See Price George's Cty. v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984); *see also Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) (quoting *Cty. Comm'rs of Carrol Cty. v. Forty W. Builders*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008)). A party may accept a contract through words or acts; no formality, such as a hand-written signature, is required. *See Porter v. Gen. Boiler Casing Co., Inc.*, 284 Md. 402, 409-11, 396 A.2d 1090, 1094-95 (1979).

Maryland law recognizes an electronic signature as a valid form of accepting an offer. Maryland has adopted the Uniform Electronic Transaction Act ("MUETA"); 2000 Md. Laws 42-43 (codified at Md. Code, Com. Law § 21-101 to -120); which defines an "electronic signature" as any "electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Md. Code, Com. Law § 21-

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

101(i). The MUETA further dictates:

> (a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
> (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.
> (c) If a law requires a record to be in writing, an electronic record satisfies the law.
> (d) If a law requires a signature, an electronic signature satisfies the law.

Md. Code, Com. Law § 106.

Plaintiffs Newton and Bush signed the MRPA in May 2019; Plaintiff Stringer signed the MRPA on her first day of employment in June 2019. Each Plaintiff reviewed the MRPA through her personal account on Fort Lincoln's employee website by using a passcode that only that Plaintiff knew. Each Plaintiff then electronically signed the MRPA by selecting the "I Agree" button, which only that Plaintiff could select. Selecting the "I Agree" button is an "electronic signature" under the MUETA. *See* § 21-101(i). Fort Lincoln's system automatically generated and maintains records of Plaintiffs' signatures. Consequently, each Plaintiff agreed to the MRPA and its terms regarding arbitration.

The Plaintiffs commenced this action after they signed the MRPA. All of the Plaintiffs' claims are related to their employment; specifically, they alleged issues related to compensation and violations of the Fair Labor and Standards Act. Thus, the Plaintiffs' claims fall within the MRPA. Further, the MRPA covers all claims for each Plaintiffs' employment duration. The FAA therefore requires this court to dismiss the Plaintiffs' complaint. *See Dean Witter Reynolds*, 470 U.S. at 217 (citing 9 U.S.C. §§ 3-4); *Choice Hotels International*, 252 F.3d at 709-10; *James*, 2020 WL 1479115 at *4.

CORE/0810992.0080/159478097.7

**B.**     **This Court Should Strike Plaintiffs' Collective Action Allegations Because the MRPA Expressly Bars Collective Action Arbitration.**

Rule 12(f) allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter." When a complaint contains allegations regarding class or collective action, but the plaintiff cannot maintain such an action, it is proper to strike those allegations. *Cf. Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110 n.2 (4th Cir. 2013) (analogizing motion to strike class allegations with a motion challenging class certification); *Stanley v. Central Garden & Pet Corp.*, 891 F. Supp. 2d 757, 769 (D. Md. 2012) (court may order pleadings amended to remove class allegations when class allegations fail) (quoting Rule 23(d)(4)).

1.     This Court determines the issue of class or collective action.

In this Circuit, the Court decides whether an arbitration agreement allows for class claims or collective actions. *See Del Webb Cmtys, Inc. v. Carlson*, 817 F.3d 867, 875 (4th Cir. 2016). "[W]hether an arbitration agreement authorizes class arbitration presents a question as to the arbitrator's inherent power" because of "the significant distinctions between class and bilateral arbitration." *See id*. Consequently, it is "a question of arbitrability" that a court must decide. *See id.* Similarly, the Supreme Court has held that a court must decide whether a specific provision of an arbitration agreement is enforceable because, as a matter of substantive federal arbitration law, a specific provision within a broader arbitration agreement is severable from the remainder of the agreement. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006)).

Despite explicitly waiving their right to class and collective action, including class or collective action arbitration, by agreeing to the MRPA, the Plaintiffs are attempting to engage in collective action. Whether they may do so, even in an arbitration, is a question for this Court. *See Del Webb Cmtys*, 817 F.3d at 875. Further, because the MRPA is exclusively an arbitration agreement, a challenge to its specific waiver of class or collective action rights falls squarely within *Rent-A-Center*'s holding. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), moreover, bars

9

1  any ruling that the MRPA is unconscionable based on MRPA's inclusion of such a waiver. *See id.*

2  at 340-42, 344, 347-48. This means that any decision that allows Plaintiffs to pursue their collective

3  action claims in arbitration necessarily adjudicated the severability of the MRPA's class or

4  collection-action waiver, triggering application of the *Del Webb Communities* rule. Therefore, the

5  decision whether the case should proceed as a single arbitration or collective-action arbitration is

6  one for this Court and not for the arbitrator.

7    2.    <u>An arbitration agreement is a contract, and a court must enforce it according to its terms.</u>

8    The FAA reflects the "fundamental principle that arbitration is a matter of contract," and

9  the FAA's "principle purpose" is to "ensure that private arbitration agreements are enforced

10  according to their terms." *AT&T Mobility*, 563 U.S. at 339, 344 (respectively quoting *Rent-A-*

11  *Center*, 561 U.S. at 67 and *Volt Info. Sciences*, 489 U.S. at 478). Courts must treat arbitration

12  agreements like any other contract and "enforce them according to their terms." *See AT&T*

13  *Mobility*, 563 U.S. at 339 (quotation omitted).

14    Parties may structure their arbitration agreements as they see fit. *Mastrobuono v. Shearson*

15  *Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) (quoting *Volt Info. Sciences*, 489 U.S. at 479). Courts

16  must enforce arbitration agreements to "give effect to the intent of the parties," as evidenced by

17  the agreement's terms. *See Stolt-Nielsen*, 559 U.S. 662, 682-84 (2010). "This is because an

18  arbitrator derives his or her powers from the parties' agreement to forgo the legal process and

19  submit their disputes to" arbitration, and the agreement defines the arbitrator's powers. *See id.*

20    A party may design arbitration processes that allow for efficient, streamlined procedures

21  tailored to the type of dispute. *See AT&T Mobility*, 563 U.S. at 344. This includes a party's

22  limitation on *with whom* it will arbitrate its disputes, which may take the form of forbearing from

23  engaging in class litigation and instead submitting to arbitration. *See id.* at 344, 347-51 (citing

24  *Stolt-Nielsen*, 559 U.S. at 684). Courts must enforce the arbitration agreement consistent with the

25  parties' designs, even in the employment context. *See AT&T Mobility*, 563 U.S. at 344; *Circuit*

26

27

28

*City*, 532 U.S. at 123 ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit . . . of particular importance in employment litigation.").

3.   The MRPA explicitly states the parties will not engage in class or collective arbitration.

Through their Complaint, Plaintiffs' seek to represent a nation-wide group of similarly situated unnamed individuals. Plaintiffs' collective-action allegations seek to resolve potentially thousands of disputes and bind unnamed parties, and ultimately force a loss of privacy and confidentiality for all those involved. These are the exact conditions the Supreme Court relied on when describing the differences between class versus bilateral arbitration and determining that parties must explicitly agree to class arbitration. *See Stolt-Nielsen*, 559 U.S. at 686-87 (noting class arbitration resolves many disputes involving the rights of unnamed and absent parties, and significantly increases the stakes and costs of arbitration despite a lack of appellate review); *see also Del Webb Communities*, 817 F.3d at 875-76.

The MRPA explicitly rejects collective-action arbitration. Aside from requiring arbitration of covered disputes, the MRPA states, **"[n]o party may bring or participate in a class or collective action against the other. The Parties waive any right to initiate or participate in a class or collective action."** J.R. at (Exhibit 1-E at 1-2). There is no contradictory language in the MRPA. The MPRA bars Plaintiffs from bringing any covered dispute as a collective action.

**C.    Plaintiffs' Complaint Must Be Dismissed as to SCI Because this Court Does Not Have Personal Jurisdiction Over SCI**

Under Rule 12(b) (2), a court must dismiss any action against a defendant over which the court lacks personal jurisdiction. Plaintiffs bear the burden on this issue. *See Mylan Labs. Inc.*, 2 F.3d at 60.

1.   This Court should rule on SCI's motion to dismiss for lack of personal jurisdiction because the Court's failure to do so may cause SCI to waive its personal-jurisdiction defense.

As explained below, there is no basis for SCI's inclusion in this lawsuit, both on the merits and because SCI has no contacts with Plaintiffs or the State of Maryland. The Fourth Circuit treats

11

motions to dismiss and compel arbitration as motions under Rule 12(b) (3). *See Stone*, 361 F. Supp. 3d at 548-49. Thus, to avoid waiver, SCI must raise both its personal-jurisdiction defense and its third-party beneficiary rights under the arbitration agreements because SCI would waive either defense if it did not assert these arguments in this motion. *See* Rule 12(g) (2) (party waives unasserted bases for dismissal if bases for are not included in party's first Rule 12 motion); *see also Stone*, 361 F. Supp. 3d at 548-49.

Further, Fort Lincoln's motion to compel arbitration cannot force Plaintiffs to arbitrate their claims against SCI because the benefit of arbitrating those claims only inures to SCI as a third-party beneficiary of the arbitration agreements. Instead, SCI must affirmatively invoke its rights. But to invoke its rights, SCI must consent to submit to an arbitrator's authority, which arguably waives SCI's personal-jurisdiction defense because a party waives any personal-jurisdiction defense by consenting to an adjudicator's authority. *See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 n. 11 (4th Cir. 2009); *see also Stone*, 361 F. Supp. 3d at 548 (arbitration clause is type of forum-selection clause). Consequently, SCI is forced to raise both its favored personal-jurisdiction defense and its rights to compel Plaintiffs to arbitrate their claims out of fear of waiving its rights under Rule 12(g)(2), but avoiding that waiver has arguably caused SCI give the arbitrator a basis for determining SCI has waived its personal-jurisdiction defense. Thus, this Court must rule on SCI's personal-jurisdiction defense to ensure SCI is not forced to waive it.

2.      SCI does not have sufficient "minimum contacts" with Maryland to allow this Court personal jurisdiction over SCI.

When a federal district court is determining if it has personal jurisdiction over a defendant, the court applies the law of the forum state, *i.e.* Maryland. *See Mylan Labs. Inc.*, 2 F.3d at 61. Therefore, Plaintiffs must prove jurisdiction is proper under both Maryland's long-arm statute and under the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 129-30, 892 A.2d 479, 486 (2006). Maryland courts have

12

said Maryland's long-arm statute extends a court's jurisdiction "to the full extent allowable under the Due Process Clause." *Mackey*, 391 Md. at. 130. Consequently, the statutory inquiry merges with the due-process inquiry. *See id.*; *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

The Due Process Clause requires the defendant have sufficient "minimum contacts" with Maryland such that "maintenance of the suit [in Maryland] does not offend traditional notions of fair place and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts arise when a defendant acts to purposefully avail itself of the privileges of conducting business within a state and gains the benefits and protection of its laws. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1953).

Personal jurisdiction can be "general" or "specific." *See ALS Scan*, 293 F.3d at 711-12 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). A court has general personal jurisdiction when the defendant maintains "continuous and systematic" contacts with the forum state. *See Hall*, 466 U.S. at 414-16. The quintessential case demonstrating general jurisdiction is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), in which the president and general manager of a foreign corporation temporarily relocated to Ohio, where he maintained an office and conducted business activities, including kept files, held in-person directors' meetings, engaged in correspondence, distributed checks drawn from Ohio bank accounts, used an Ohio bank as a transfer agent, and supervised the business's overseas properties. *See id.* at 447-448.

Specific jurisdiction focuses on the connection between a defendant's contacts with the forum and the basis for the suit. *See ALS Scan*, 293 F.3d at 712. When determining whether specific jurisdiction exists, courts consider:

> (1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."

*Id.* (quoting *Christian Science Bd. of Dirs. Of the First Church of Christ, Scientist v. Nolan*, 259

13

F.3d 209, 216 (4th Cir. 2001)). Specific jurisdiction is only proper when a defendant purposefully directed its activities at the residents of the forum state and the cause of action "result[ed] from alleged injuries that arise out of or relate to those activities." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

Plaintiffs cannot prove SCI has sufficient minimum contacts with Maryland to allow this Court to exercise either general or specific jurisdiction. SCI is a holding company; it has no officers or employees in Maryland, and its corporate headquarters are in Houston, Texas. SCI is not licensed and does not conduct any business in Maryland. It does not have any offices in Maryland

SCI is not Plaintiffs' employer, and is not responsible for compensating Plaintiffs or determining Plaintiffs' compensation from Fort Lincoln. SCI is not a party to any contract with the Plaintiffs, including any contract that may relate to Plaintiffs' claims in this case or the PEAP or MRPA. SCI does not own or manage Fort Lincoln. Therefore, SCI is not connected to Plaintiffs' claims. Further, SCI does not have continuous and systematic contacts with Maryland, nor has SCI conducted business in Maryland or taken any action to avail itself of Maryland's laws or protections. Consequently, this Court has neither general nor specific personal jurisdiction over SCI.

3.      <u>Plaintiffs cannot prove that Fort Lincoln's contacts with Maryland should be attributed to SCI.</u>

In general, "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). That said, Maryland has adopted the "'agency' test in deciding whether to pierce the veil separating parent corporations form their subsidiaries for jurisdictional purposes." *Mylan Labs.*, 2 F.3d at 61 (*citing Vitro Elec., Div. of Vitro of Am. v. Milgray Elecs., Inc.*, 255 Md. 498, 501-03, 258 A.2d 749, 751-52 (1969)).

Under that test, a subsidiary's actions are attributable to its parent only when the parent exerts "considerable control over the activities of the subsidiary;" the central question is "whether

CORE/0810992.0080/159478097.7

significant decisions of the subsidiary must be approved by the parent." *Mylan Labs.*, 2 F.3d at 61. Other factors include observation of corporate formalities such as the parent and subsidiary "maintaining separate books and records, employ[ing] separate accounting procedures, and hold[ing] separate directors' meetings;" *see id.* (citing *Vitro Elec.*, 255 Md. at 506); and the subsidiary having "some independent reasons for its existence" and not merely doing the parent's bidding and being under the parent's "complete domination and control." *See Mylan Labs.*, 2 F.3d at 61 (quoting *Harris v. Arlen Props., Inc.*, 256 Md. 185, 200, 260 A.2d 22, 29 (1969)). "Finally, the court must find that [the parent] knew, or should have known, that its conduct would have some impact in Maryland." *See Mylan Labs.*, 2 F.3d at 61-62. In this jurisdictional context, "Maryland generally is more restrictive than other jurisdictions in allowing [a] plaintiff to pierce the corporate veil." *See Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 514 (D. Md. 2004).

Plaintiff cannot prove Fort Lincoln's contacts with Maryland should be attributed to SCI. SCI is a holding company for a multinational organization, while Fort Lincoln provides products and services to small geographic area. Their business operations are distinct and SCI does not act to control Fort Lincoln's operations. SCI does not control Fort Lincoln's employment decisions, including determining associate compensation and terms of employment. SCI does not determine Fort Lincoln's marketing, purchasing, pricing, and management policies and strategies. SCI and Fort Lincoln maintain separate books, records, accounting procedures, and hold separate directors' meetings. Consequently, SCI does not exercise "considerable control" over Fort Lincoln. Further, SCI had no expectation that it would impact Maryland because it took no action in relation to Plaintiffs' employment.

4.   SCI's website passively provides information and does not create contacts sufficient to allow this Court to exercise jurisdiction.

Because the internet is "omnipresent" and the information a person places on it is accessible from anywhere, principles of jurisdiction have been adapted to assessing contacts made

by the internet. *See ALS Scan*, 293 F.3d at 712-13. The Fourth Circuit has adopted the approach from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *ALS Scan*, 293 F.3d at 713. *Zippo* stated a sliding scale in which

> At one end of the spectrum are situations where a defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information.

*ALS Scan*, 293 F.3d at 713-14 (citing *Zippo*, 952 F. Supp. at 1124 (citations omitted)).

Consolidating *Zippo*'s sliding scale, *ALS Scan* state that a forum state can exercise jurisdiction of a defendant based on contacts created via the internet when the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person with the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. The focus of the test remains "that an out-of-state person have engaged in some activity purposefully directed toward the forum state . . . creat[ing] a substantial connection with the forum state." *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353-54 (4th Cir. 2020); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142 (4th Cir. 2020 ("[P]urposeful availment [i]s the touchstone of the minimum-contacts analysis."). "The general availability of [a] website to [a state's] residents . . . does not create the substantial connection to [the state] necessary to support the exercise of jurisdiction." *See Fidrych*, 952 F.3d at 143.

SCI's website is a passive website on *Zippo*'s sliding scale. SCI does not sell any services and products through its website (or at all). Instead, SCI's website only provides information about

16

the products and services available from SCI affiliates. Consequently, it is a passive website that "does little more than make information available to those who are interested in it" and "is not grounds for the exercise [of] personal jurisdiction." *See ALS Scan*, 293 F.3d at 714 (citing *Zippo*, 952 F. Supp. at 1124 (citations omitted)).

**IV.    CONCLUSION.**

This Court should dismiss SCI because this Court lacks personal jurisdiction over SCI. Defendants' Motion to Dismiss should also be granted together with striking Plaintiffs' collective-action allegations

RESPECTFULLY SUBMITTED this __1__ day of September, 2020.


**STINSON LLP**

By:    */s/ Brandon Nagy*
Brandon Nagy (D. Md. Bar No. 20834)
1775 Pennsylvania Avenue N.W., Suite 800
Washington, DC 20006-4605
Phone: (202) 785-9100
Fax: (202) 785-9163
brandon.nagy@stinson.com

Lonnie J. Williams, Jr. (*pro hac vice*)
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
lonnie.williams@stinson.com

*Attorneys for Defendants*

CORE/0810992.0080/159478097.7

**CERTIFICATE OF SERVICE**

I hereby certify that on  September 1 , 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to all CM/ECF registrants.

By: */s/ Mary-Margaret Avelleyra*

18